UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

**CIVIL ACTION NO. 14-44-DLB-EBA**

**ASHLAND HOSPITAL CORPORATION, d/b/a**                    **PLAINTIFF**
**KING'S DAUGHTERS MEDICAL CENTER**

**vs.**                  <u>**MEMORANDUM OPINION AND ORDER**</u>

**PROVATION MEDICAL, INC.**                                         **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**I.**      **Introduction**

Defendant ProVation Medical, Inc. moves to dismiss Plaintiff Ashland Hospital Corporation's fraud claim, arguing that the claim is barred by Kentucky's economic loss doctrine. Alternatively, ProVation states that dismissal is appropriate for the following reasons: (1) KDMC did not plead its fraud claim with the particularity required by Rule 9(b); (2) KDMC did not establish that it acted in reliance upon the alleged misrepresentations; and (3) ProVation's representative did not make any statements amounting to actionable fraud under Kentucky law. The Court has original jurisdiction over this removed action pursuant to 18 U.S.C. § 1332.

**II.**      **Factual and Procedural Background**

Plaintiff Ashland Hospital Corporation, doing business as King's Daughters Medical Center (hereinafter "KDMC"), is a regional hospital located in Ashland, Kentucky. (Doc. # 1-2, p. 2, ¶ 7). Defendant ProVation Medical, Inc. (hereinafter "ProVation") markets,

1

licenses and maintains documentation software for use in medical facilities. (*Id.*). In Fall of 2011, ProVation sent its Cardiovascular Sales Director, Mike DeRosier (hereinafter "DeRosier"), to meet with KDMC representatives and discuss the possible implementation of ProVation software in KDMC's cardiac catheterization lab. (*Id.* at p. 2, ¶ 8). During this visit, DeRosier tried to determine whether ProVation software was compatible with KDMC's existing information technology (hereinafter "IT") infrastructure by speaking with KDMC staff, examining the software system in the cardiac catheterization lab and studying KDMC's electronic, orders-based workflow. (*Id.* at p.2, ¶ 9-10).

After inspecting the lab's IT setup, DeRosier allegedly assured KDMC representatives that ProVation software could interface with KDMC's existing software, including EPIC, and accommodate the lab's needs and workflow requirements. (*Id.*). DeRosier further stated that he had previously worked for EPIC and was familiar with its software, as well as its operation and integration with ProVation software. (*Id.* at p. 2-3, ¶ 11). Finally, DeRosier represented that ProVation's software had been successfully implemented for use in other cardiac catheterization labs. (*Id.* at p.2, ¶ 9-10). According to KDMC, ProVation's website also generally states that its software could be easily integrated with the existing IT infrastructure and "'[s]treamline integration between multiple systems' to ensure that the 'software is configured to meet the workflow and documentation needs of physicians.'" (*Id.* at p.3, ¶ 12). These assurances persuaded KDMC to purchase ProVation's software. (*Id.*).

On December 29, 2011, KDMC and ProVation entered into a Software License and Maintenance Agreement (hereinafter "Agreement"). (*Id.* at p. 3, ¶ 13). For several months thereafter, ProVation tried to install and integrate its software in KDMC's cardiac

2

catheterization lab. (*Id.* at p.3, ¶ 14). KDMC's IT staff provided considerable assistance in these failed attempts to "go live" with ProVation's software. (*Id.* at p. 3, ¶ 15). During software testing, the IT staff realized that patient information was not passing from the pre-existing EPIC software, which promotes an "orders-based" workflow, to ProVation software, which supports a "notes-based" workflow. (*Id.* at p. 3-4, ¶ 16). When asked about ProVation software's compatibility with an "orders-based" workflow, ProVation employee Mialena Walker told the IT staff that this issue left ProVation in "uncharted waters." (*Id.* at p. 3-4, ¶ 18). While ProVation software had previously been implemented in KDMC's gastroenterology lab in Portsmouth, Ohio, such labs commonly use a "notes-based" workflow, while most cardiac catheterization labs use an "orders-based" workflow. (*Id.* at p. 4, ¶ 20). ProVation later admitted that its software was only designed to function with a notes-based workflow. (*Id.* at p. 4, ¶ 21).

On May 24, 2013, KDMC invoked the Agreement's informal dispute resolution provision. (*Id.* at p. 5, ¶ 22). ProVation's senior management requested more time to resolve these software implementation problems. (*Id.* at p. 5, ¶ 23). KDMC agreed to this arrangement. (*Id.*). By November 2013, ProVation still had not managed to successfully integrate the software, so KDMC notified ProVation that it was revoking acceptance of the software and requesting a refund. (*Id.* at p. 5, ¶ 24). ProVation denied this request, stating that KDMC had no grounds to revoke acceptance or request a refund. (*Id.* at p. 5, ¶ 25). KDMC filed suit in Boyd County Circuit Court shortly thereafter, and ProVation promptly removed the action to this Court. (Docs. # 1, 1-1 and 1-2). At the time of filing, KDMC had never successfully used ProVation software in its cardiac catheterization lab. (Doc. # 1-2, p. 5, ¶ 27). ProVation no longer provides software support to KDMC's Ashland location.

(*Id.*).

**III.    Analysis**

   ***1.    Applicable Law***

Federal courts sitting in diversity apply federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). The substantive law of the forum state governs the claims asserted. *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439 (6th Cir. 1993); *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993). Accordingly, the Court will evaluate ProVation's Motion in accordance with the Federal Rules of Civil Procedure and apply substantive Kentucky law to KDMC's fraud claim.

   ***2.    Standard of Review***

Pleadings must generally include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, fraud claims are subject to a higher standard, which requires the plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir. 1984)(stating that "a plaintiff must at minimum allege the time, place and contents of the misrepresentation upon which he relied"). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Twombly*, 555 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

4

When reviewing a motion to dismiss for failure to state a claim, the Court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [his] factual allegations as true." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). If an allegation is "capable of more than one inference, it must be construed in the plaintiff's favor." *Ashland Hosp. Corp. v. Int'l Bhd. of Elec. Workers Local 575,* 807 F. Supp. 2d 633, 638 (E.D. Ky. 2011)(quoting *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)(citations omitted)). However, the Court "is not bound to accept as true unwarranted factual inferences, or legal conclusions unsupported by well-pleaded facts." *Id.* (internal citations omitted).

### 3. Kentucky's Economic Loss Doctrine

The economic loss doctrine "prevents the commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, recognizing that such damages must be recovered, if at all, pursuant to contract law." *Giddings & Lewis, Inc. v. Indus. Risk Ins.*, 348 S.W.3d 729, 733 (Ky. 2011). Economic loss encompasses "both loss in the value of the product caused by a defect in the product (direct economic loss) and consequential loss flowing from the defect, such as lost profits (consequential economic loss)." *Highland Stud Int'l v. Baffert*, Civ. A. No. 00-261-JMH, 2002 WL 34403141 at *3 (E.D. Ky. May 16, 2002). This rule "maintains the historical distinction between tort and contract law," "protects parties' freedom to allocate economic risk by contract" and "encourages the party best situated to assess the risk of economic loss, usually the purchaser, to assume, allocate, or insure against that risk." *Mt. Lebanon Pers. Care Home v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)(quoting Frumer & Friedman, § 13.11[1]).

In *Giddings & Lewis*, the Kentucky Supreme Court held that "the economic loss rule applies in Kentucky to negligence and strict liability claims arising from the malfunction of commercial products" because "economic losses . . . deprive the purchaser of the benefit of his bargain and that such losses are best addressed by the parties' contract and relevant provisions of Article 2 in the Uniform Commercial Code." 348 S.W.3d 729, 736, 739-40 (Ky. 2011). The court also applied the rule to negligent misrepresentation claims, reasoning that "when the alleged [negligent] misrepresentations relate solely to the character, nature and performance of the product itself, the claim is essentially an attempt to make an end-run around the negotiated warranty in the parties' contract and the economic loss rule should apply just as it does to negligence and strict liability theories." *Id.* at 744. However, the court declined to consider the rule's applicability to fraud claims because "the plaintiffs in this case pled fraud by omission, a claim that is unsustainable on the record before us, irrespective of the economic loss rule." *Id.* at 733.

Because the Kentucky Supreme Court has yet to fully define the contours of Kentucky's economic loss rule, federal courts have had to *predict* "whether Kentucky courts would apply the economic loss rule to fraud claims." *See Derby City Capital, LLC v. Trinity HR Serv.*, 949 F. Supp. 2d 712, 727 (W.D. Ky. 2013)(stating that "it appears [ ] the economic loss rule would preclude recovery on Plaintiffs' fraudulent inducement claim," but ultimately dismissing the claim for Plaintiff's failure to satisfy the heightened pleading standard of Rule 9(b)); *Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 955, 969 (W.D. Ky. 2007)(finding that "the economic loss doctrine would apply to [plaintiff's] fraud claim, as it is a tort claim arising from a business purchase which is intertwined with the underlying contract action"); *Strathmore Web Graphics v. Sanden Machine, Ltd.*, Civ. A.

6

No. 3:99-cv-345-S, 2000 WL 33975406 at *3 (W.D. Ky. May 16, 2000)(holding that the economic loss doctrine barred plaintiff's fraud claim because "[t]he allegedly fraudulent representations relate solely to the quality or character of the [product]").

While the above-cited case law predicts that the Kentucky Supreme Court would extend the economic loss doctrine to fraud claims, "it should be recognized that other jurisdictions have decided this question differently." *See Highland Stud Int'l v. Baffert*, Civ. A. No. 00-261-JMH, 2002 WL 34403141 at *4 (E.D. Ky. May 16, 2002)(*citing Purizer Corp. v. Battelle Mem'l Inst.*, No. 01 C 6360, 2002 WL 22014 at *5 n. 7 (N.D. Ill. Jan. 7, 2002)(noting that New Jersey law "does not bar parties from recovering fraud damages for purely economic loss," while Michigan law does)).

In sum, KDMC's claim rises and falls with a question that the Kentucky Supreme Court has yet to answer: Does Kentucky's economic loss doctrine apply to fraud claims? While the Western District of Kentucky has predicted that the Kentucky Supreme Court would apply the economic loss doctrine to fraud claims, it has not explained how or why it reached that opinion. Given the conclusory nature of these decisions, this Court is not inclined to adopt the Western District's approach without delving further into the issue.

Some district courts within the Sixth Circuit have extended the doctrine to fraud claims, reasoning that purely economic losses are best redressed by the parties' contract, while others have held that the doctrine does not apply to fraud claims because such claims arise from duties independent of the contract. *Compare Hodell v. Natco Industries, Inc.* 2010 U.S. Dist. LEXIS 143144 at 33-34 (N.D. Ohio Sept. 2, 2010)(interpreting Ohio law) *with Irwin Seating Co. V IBM*, 306 F. App'x 239 (6th Cir. 2009)(applying Michigan law). Whichever school of thought is adopted, courts apply it with equal force to fraud and

7

negligent misrepresentation claims. *See Hodell*, 2010 U.S. Dist. LEXIS 143144 at 33-34 (noting the court's previous decision not to extend the economic loss doctrine to negligent representation claims and concluding that "[i]t would be inherently inconsistent to find that negligent misrepresentation claims survive the economic loss doctrine while fraud or fraud in the inducement claims do not"); *Irwin*, 306 F. App'x at 243 (affirming the district court's determination that plaintiff's fraudulent inducement and negligent misrepresentation claims were barred by the economic loss doctrine).

The Kentucky Supreme Court may not have decided whether the economic loss doctrine applies to fraud claims, but it has indicated a preference for broader application of the doctrine. In *Giddings & Lewis*, the court rejected plaintiffs' attempts to argue that the economic loss doctrine did not apply to negligent misrepresentation claims because such claims arise from duties independent of the contract. *See* 348 S.W.3d at 733. Instead, the court applied the doctrine to negligent representation claims, explaining that purely economic losses are best addressed by contract-based theories of recovery and noting that plaintiffs' approach had the potential to create an undesirable end-run around the contract. *Id.* A finding that fraud claims are exempt from the economic loss doctrine would not only represent a departure from the general trend of treating negligent misrepresentation and fraud claims similarly, it would create patently inconsistencies with the court's prior reasoning. Given the Kentucky Supreme Court's rather broad application of the economic loss doctrine, as well as the close relationship between fraud and negligent misrepresentation claims, this Court is now confident in predicting that the Kentucky Supreme Court would extend the economic loss rule to fraud claims.

Despite this evidence, KDMC insists that the economic loss doctrine is inapplicable, repeatedly reminding this Court that *Giddings & Lewis* did not definitively decide the issue. 348 S.W.3d at 733. KDMC further argues that the Court of Appeals' opinion in *Giddings & Lewis*, which holds that the economic loss rule did not bar plaintiff's fraud claim because it arose from duties independent of the contract, is the last and best guidance available on whether the economic loss rule applies to fraud claims in Kentucky." (Doc. # 8 at 6); *see Indus. Risk Insurers v. Giddings & Lewis, Inc.*, 2009 Ky. App. LEXIS 106, 20 (Ky. Ct. App. July 2, 2009). Applying the lower court's ruling, KDMC concludes that the economic loss rule does not dispose of its fraud claim because it pertains to "antecedent fraud that affects the very validity of the contract, rather than fraud relating generally to matters covered by contract." (Doc. # 8 at 6).

While Plaintiff accurately summarizes the Kentucky Court of Appeals opinion, the Court is not convinced that it is in fact "the last and best guidance available." The Court of Appeals held that the economic loss rule was inapplicable to both negligent misrepresentation claims and fraud claims because they were independent of contractual duties. *See Indus. Risk Insurers v. Giddings & Lewis, Inc.*, 2009 Ky. App. LEXIS 106, 20 (Ky. Ct. App. July 2, 2009). As this Court has already explained in detail, the Kentucky Supreme Court specifically rejected this logic as to the negligent misrepresentation claim, concurring with the defendant's position that this was an end run around the contract. Because the Kentucky Court of Appeals relied upon the same rejected reasoning in finding that the economic loss rule did not apply to fraud claims, the Kentucky Supreme Court severely undermined the Court of Appeals' analysis on the rule's applicability to fraud claims, albeit without explicitly addressing the issue. Under these dubious circumstances,

the Court simply cannot rely upon the Kentucky Court of Appeals' opinion.

KDMC next argues that it is entitled to plead both fraud and contract-based theories of recovery at this early juncture, even though election of remedies may be necessary at a later date. Although KDMC cites case law in support of this argument, none of these cases address the continued validity of this principle in light of *Giddings & Lewis*. *See Radioshack Corp. v. ComSmart,* Inc., 222 S.W.3d 256, 261 (Ky. App. 2007)("Where an individual is induced to enter into the contract in reliance upon false representations, the person may maintain an action for a rescission of the contract, or may affirm the contract and maintain an action for damages suffered on account of the fraud and deceit."); *Hanson v. Am. Nat'l Bank & Trust Co.*, 865 S.W.2d 302, 306-307 (Ky. 1993)(noting that plaintiff elected to affirm the contract and pursue damages in tort for the fraud). The Court is likewise unaware of any post-*Giddings & Lewis* cases discussing the election of remedies, perhaps because this concept simply incompatible with the economic loss doctrine. It would be contrary to the spirit of the economic loss doctrine, which encourages parties to address purely economic losses through contract-based theories of recovery, to allow a plaintiff to plead both tort and contract-based theories of recovery at the beginning of a case. Given the Court's prior conclusions about the applicability of the economic loss doctrine, it cannot allow KDMC to plead both theories of recovery.

KDMC then asserts that "even if [its] fraud claim was barred, at most this would deprive [it] of the option to elect fraud recovery over rescission." (Doc. # 8 at 8). If KDMC cannot seek tort recovery, it need only show that "the representations were false and actually misled the person to whom they were made" in order to obtain rescission of the contract. (*Id.*). Admittedly, the Court finds this argument perplexing. KDMC seems to

argue that the Court should allow the fraud claim to proceed, without requiring KDMC to prove all elements of fraud, simply because KDMC seeks equitable relief rather than tort damages. This suggestion is not only unsupported by case law, it improperly focuses on the remedy rather than the underlying theory of recovery. The economic loss doctrine recognizes that economic losses are better suited to contract-based theories of recovery. It does not preclude plaintiffs from seeking certain forms of relief under a contract-based theory. Therefore, dismissal of KDMC's fraud claim will not prevent it from pursuing rescission of the Agreement, especially since KDMC has already requested rescission on grounds of mutual mistake. (Doc. # 1-2, p. 7, ¶ 42).

Finally, KDMC attempts to analogize this case to *Hodell v. Natco Industries, Inc.*, in which a mid-sized business brought fraud, fraudulent inducement, breach of contract, negligence and negligent misrepresentation claims against a vendor for economic losses arising out of malfunctioning software. 2010 U.S. Dist. LEXIS 143144 (N.D. Ohio Sept. 2, 2010). The business alleged that the vendor made several false and misleading statements about the software's user capacity, attendant customer support and the number of successful installations, all with the intent of inducing the business to enter into a contract. *Id.* at *10-11. When asked to apply the economic loss doctrine to the fraud claim, the Northern District of Ohio declined to do so, reasoning that "the economic loss doctrine prevents a party from recovering in tort for breach of duties assumed only by contract, [while] 'fraudulent inducement involves a general duty to avoid wrongful conduct that induces a party to enter into a contract.'" *Id.* at 33-34 (quoting *Onyx Envtl Serv., LLC v. Maison*, 407 F. Supp. 2d 874, 879 (N.D. Ohio 2005)).

Factual similarities aside, *Hodell* does not affect the outcome of this case. After all, there are other factually similar cases that reach the opposite result because the law in that state is different. *See Irwin Seating Co. V IBM*, 306 F. App'x 239 (6th Cir. 2009). The *Hodell* court based its opinion on Ohio law, which promotes a more limited application of the economic loss doctrine than Kentucky jurisprudence. Because the Kentucky Supreme Court's treatment of negligent misrepresentation claims suggests a willingness to extend the rule to fraud claims, and because KDMC has given this Court no reason to reconsider its initial conclusion, the Court will now apply the economic loss doctrine to KDMC's fraud claim.

In this case, the fraud claim is based upon DeRosier's alleged assurances that ProVation software could interface with KDMC's existing software, including EPIC, and sync with an orders-based workflow. Because these misrepresentations relate solely to the character and quality of the product, and because KDMC seeks redress for purely economic losses resulting therefrom, this fraud claim falls well within the ambit of the economic loss rule. Moreover, DeRosier's misrepresentations essentially deprived KDMC of the benefit of its bargain, which provided for the licensing, installation and maintenance of ProVation software in KDMC's cardiac catheterization lab. The economic loss rule is clear that KDMC's remedy for such grievances lie in contract, not tort.

Construing the Complaint in the light most favorable to KDMC, and accepting all factual allegations contained therein as true, the Court finds that the economic loss doctrine bars KDMC's fraud claim. Having found that KDMC has failed to state a claim upon which relief can be granted, the Court need not consider ProVation's remaining arguments on that count.

## IV. Conclusion

Accordingly, for reasons stated herein,

**IT IS ORDERED** that ProVation's Motion to Dismiss Count I of the Complaint (Doc. # 4) is **granted**.

This 29th day of October, 2014.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\Ashland\14-44 Order Granting MTD on Ct 1.wpd